Case No. 25-7140, Eugene Nyambal, Appellant v. Allied Barton Security Services, LLC. Mr. Flood, for the appellant, with the Bacon-Flood applicant. Mr. Flood. Mr. Flood, we saw the motion that was filed. I apologize for the timing, Your Honor. Yes, so we're denying that motion, and we will proceed with oral arguments. And my client, Mr. Nyambal, the court graciously permitted him to join remotely without the ability to communicate. He asked to respectfully notify the court that if that would not be modified, he would decline to join remotely. We appreciate the court's willingness to allow that to happen. Thank you. May it please the court, I'm John Flood with Flood Law. On behalf of the appellant, Edward Nyambal. It's a long history of litigation here, a lot of docket entries. I've done my best to try and master that so I can make the best presentation possible for my client to the court. On behalf of the appellant, we respectfully submit that the district court's decision, which had granted summary judgment to the appellee, should be reversed, and we have five reasons. First, under Rule 56, as the court's well aware, summary judgment should not have been granted if there's a dispute of material fact. The appellant's argued extensively in his briefing, and our position remains that there was a dispute of material fact here. And the key issue really gets, the crux of it is, what was the defendant's role, responsibility, and potential culpability? And at least from a negligence standpoint in relation to the publication, republication of the do not admit list to the World Bank. Second, respectfully, we submit that the district court did not consider at least a portion of the appellant's opposition and his evidence supporting that and his cross motion. Remarkably noticeable, in my opinion, in the district court's memorandum of opinion, is the absence of any reference at all to request for admissions, which the appellant had filed with the summary judgment record, including the responses of the appellee to the third set, or third request for admissions. Now, I note for the court, in the record, it's a little confusing. Proceeding pro se, he didn't label them third set request for admissions, but they're in there. And our position, the appellant's argued that number one, his position was, and his understanding was, they were untimely in answering those. Honestly, the record of the case gets confusing. There are stays in and out, as Mr. Nineball was trying to move for interlocutory appeal at different times. I appreciate the back and forth over the adequacy of responses and things like that. In any of these, was there actual affirmative indication that allied Barton played more of a role than the district court perceived in placing Mr. Nineball on the list? Because that seems, as you previously correctly, that's sort of the dispositive question. Your Honor. So those procedural grievances, which may have merit, or is it a substantive point that one of these shows allied Barton played more of a role? Putting aside whether they were untimely and deemed admissible, for the sake of argument, substantively, the appellant certainly was trying to argue this in his briefing, that he believes certain responses squarely supported his position and helped to demonstrate, at a minimum, a dispute of material fact. RFA responses 37, 38, 40, 59, 60, 62, 68, and 71. And a lot of those go to the issue of allied Barton's responsibility. The full read of the contract, not just from my client's standpoint, the very narrow and, frankly, not candid. Can you tell us substantively what those citations are supposed to say? Yes. He asked for admissions regarding different portions of the contract between allied Barton and the World Bank and their different roles. And a critical area of responsibility that we think is very significant here for his position is that they had a role over, and I'm sorry, I'm forgetting the exact name of their process, basically their security information system. And as part of that, we understand the contract to say that as part of that, they also had responsibility in relation to incident reports. You know, it's not just they get a DNA list and they stand at the screening counter, yes or no, let them in. We believe the evidence supported, and through those RFA responses especially, a more substantive picture of their responsibility, which we think is tied directly to the potential for their negligence. I'm still not understanding what you assert their responsibility was, because I thought your claim was that they had some role in deciding who's placed on the do not admit list, and there wasn't anything in the record to support that. And now you're saying there might be some contractual provisions. And I'm asking you what is said in the contract that makes Allied Barton responsible for putting people on the do not admit list. So, number one, there's two contracts here, Allied Barton with IMF, Allied Barton with World Bank. I think the record is clear. IMF did not have a right to, you know, interfere or control Allied Barton in relation to other customers it was dealing with, in this case World Bank. The appellant is alleging that the DNA list came from IMF to Allied Barton. They're the bridge to World Bank. And it's at that point, and we think the contractual provisions I've mentioned in the RFA responses that are attached. With which party, with World Bank? With Allied Barton. Allied Barton with who, with World Bank? Yes, they had a contract, separate contract with World Bank. Okay. And you think there's something in the contract between Allied Barton and World Bank that says that Allied Barton is in control of what's on the DNA list? We think the record is, if I may, we think the record is clear. Allied Barton did not have information throughout this time to indicate that Mr. Niemball was a security threat. So, I think that is undisputed. I'm sorry. I thought the issue was whether Allied Barton had any role in placing him on the DNA list. If IMF made the DNA list, gave it to Allied Barton, and Allied Barton just enforced the DNA list at the World Bank, in your view, is Allied Barton responsible? I think they do. I think the record shows they have an independent measure of responsibility. So, under that scenario, you think that Allied Barton would be liable? As a republisher, right. Okay. So, if we disagree with that, then do you have any response to that? I do. I do. And what I think is, and I've touched on issue two, which is we believe the court didn't consider sufficiently the evidence put forward by the appellant. I think what we have here is a link of errors feeding upon itself that led to a result in the summary judgment decision. In 2019, the appellant, when he had counsel, asked for leave to file an amended complaint. I'm curious about that. So, I mean, the primary reason that Mr. Anvils sought to amend the complaint was to get in this republication theory of defamation. Is that correct? Right. And so, even if there was no undue delay or undue prejudice, there would be, as a matter of law, you can't get a republication theory of defamation if Allied Barton and the World Bank have a common interest. So, can you address that question? I mean, it seems that they do have a common interest. They have a contractual common interest, and that would be, as a matter of law, sufficient to defeat any republication. We disagree, and we think the allegations in the amended complaint he sought to have filed sufficiently alleged facts to address that issue, to allege not just negligence, but also his allegations there with malice, you know, knowing it was false and or with reckless disregard. I'm paraphrasing that a bit, but that is in his proposed amended complaint from 2019, and we think that serves to defeat the common interest or qualified privilege of a common interest. That complaint added facts, which we think bolstered his defamation claim. That complaint added a theory of aiding and abetting liability, and he sought also to add a negligence claim there. The court, with great respect to Judge Sullivan, in its amended order, rejecting that filing, and this was in, I believe, May of 2020. The judge cited to the fact the case has been here about four years, and with great respect, I did the math. The time that it was filed until the time Mr. Nienbaugh, through counsel, asked for leave to file that amended complaint, on February 28, 2020, it was within the parameters of the scheduling order. The judge had just, I think, in October, granted the motion for reconsideration on his prior ruling on the motion to dismiss. No discovery, to my knowledge, had happened before that time. What we're really looking at is about a 47-month period where the court had before it the motion to dismiss, the motion for reconsideration. Mr. Nienbaugh then had, it's not over five months from the point the motion for reconsideration is granted. He's then asking the court for leave to file that amended complaint. With great respect, we think that the court's comments about the length of time, and at least the implication, perhaps, that that was Mr. Nienbaugh's fault at that point, we think that's erroneous, and we think that decision was an abuse of discretion. And the length of errors I mentioned, if that had been permitted, and you look at the record evidence that was before the court on summary judgment, we think it fits squarely and presented a very compelling record, at least to deny summary judgment to Allied Bar. I see her over time, so. One more question.  Assume with you on, sorry, going to the viability of the first amended complaint. So the original complaint, in terms of defamation, and I'm interested in particular on what Mr. Nienbaugh was claiming caused him harm. It seemed the primary theory was that this public episode of him being denied access in front of folks that he knows caused him these reputational and financial harms. You mentioned the incident reports, and I had a question reviewing the first amended complaint about whether there were any allegations that suggested the incident reports would have caused him any harm. Because based on the allegations in the complaint, that sounds like a report that says it's internal to the World Bank, as Judge Rao suggested. And separate from any privilege issue, it wasn't obvious that there were allegations that the reports led to some harm to Mr. Nienbaugh, as opposed to that public humiliating spectacle. And I acknowledge, I think, in that proposed first amended complaint, it's not a specific allegation. You know, here's a certain incident report and caused me X, Y, and Z harm. I think it's part and parcel. I think it's all built in together, where he's on the DNA list, Allied Barton publishes it to World Bank, the incidents happen. More people at World Bank now know about this. That's right. And frankly, as alleged, his life has fallen apart because of all this. Thank you. If no further questions, I reserve one minute respectfully. Thank you. Good morning. May it please the Court? Edward Bacon on behalf of the appellee, Allied Barton. I'd like to begin by focusing on an aspect of the case that I think permeates virtually every issue that's being raised. The Court's aware of the lengthy procedural aspect of this case and the early motions practice on the motion to dismiss. After October 10 of 2028, when Judge Sullivan reinstated the single incident of defamation, the parties had a period of time from October of 2018 to April 1 of 2022 to conduct discovery, and they did. The parties engaged in discovery. They exchanged answers to interrogatories. Documents were requested. Documents were produced. Requests for admissions were served. Requests for admissions were responded to. And I would urge the Court, just to take a quick digression, to look at the filings we made, Allied Barton made, in connection with the motions for summary judgment, because the requests for admissions were all timely answered in accordance with court orders and extensions of times that had been granted by opposing counsel. But the point is, the parties did actively engage in discovery, and the record that comprises the motion for summary judgment, the cross motions for summary judgment, largely resulted from those discovery activities. And I would urge the Court to look at what Allied Barton attached as Exhibit 5, which is referenced in Judge Allecon's opinion, and it was also an exhibit which Mr. Neamble attached as part of his cross motion for summary judgment, because Exhibit 5 was a document produced by Mr. Neamble that conclusively established the source of Mr. Neamble's name and photograph being provided to the World Bank. And it is an email transmittal where it is undisputed that it is the IMF that provided the information to the World Bank asking that Mr. Neamble be added to the DNA list. We've had a number of recent additions to our Do Not Admit list. Please ensure none of these individuals are issued a meetings badge. And this was dated October 4 of 2013. I'm sorry, where is this in the record? Pardon me? What is the record citation for that? So this is at 338, as part of my exhibit, 338-7. And I am looking at page 4 of that document. And then there is a memo before that at page 3 or 4 where the World Bank provided an explanation saying that it receives as a matter of normal process from the IMF at least twice a year ahead of the spring and annual meetings a list of names on the Funds Do Not Admit list. And there is a transmittal of this information to Mr. Neamble because he had complained about it, not being able to enter the World Bank building in October 2013. And he received this information on June 5, 2014, that established that the information in putting him on the Do Not Admit list did not come in any form or fashion from Allied Barton, but it came directly from the IMF to the World Bank requesting that it include Mr. Neamble on that list. After all of the discovery, and I would say that amended complaint or no, Mr. Neamble had an opportunity to produce evidence to the extent any existed in support of his motion for summary judgment and make those arguments, none of which is there. Judge Alicon went through the record. We provided Judge Alicon with answers to interrogatories, an affidavit. Mr. Neamble certainly had the opportunity in the time through numerous lawyers that represented him throughout to establish a record that there was a genuine dispute of material fact, and none were there. And that was the point that Judge Alicon took both aspects of it. There is nothing here. There is this exhibit that both parties had that established where this information came from. There's no evidence of republication. There's no evidence of a defamatory action taken by Allied Barton. Counsel, one of the theories that would have been added by the amended complaint was a negligence claim. And it seems to be that the theory that would pervade all the different variations of that claim is that even if Allied Barton played no role in putting him on the list, the D.C. law somehow imposed a duty of reasonable care to have checked. No, I understand. And I'm just wondering if you've thought through and have an argument for why that negligence, that slightly different negligence theory, would fail. It's still a negligence theory. And the negligence, at least conduct of at least negligence, is an element of defamation. In order for you to have defamation, there must be at least some conduct on the part of the alleged defamer. And there isn't any here. That discovery, the same discovery we were doing to establish what was the conduct of Allied Barton, would apply to a negligence theory, a negligence supervision theory, even to the idea of an invasion of privacy, false light type of theory. We were still looking at what was Allied Barton's conduct. And there was none. And so I think you get to the point when I looked at a lot of the case law, because we all know, look, judges are told leave to amend is to be freely given. And here are the aspects. Even when I look back, and I think it was the Caribbean Broadcasting, when I was looking at that case about amending complaints, where the court ended up deciding, okay, but even if we were to agree that leave should have been granted, we would not remand the case because it would be a waste of judicial resources. The same issue is going to be there, and it's already been surfaced in the underlying case. So Judge Ali Khan looked at that, made her arguments, not arguments, looked at the evidence and correctly concluded there's no evidence here to implicate Allied Barton at all in placing Mr. Neambol on the do not admit list, none. And there was no other evidence in the record that was establishing any type of negligent conduct on the part of Allied Barton. So that would be my response to that.  And I do think that that issue, the fact that the parties did participate, the fact that the parties did engage in discovery, there was ample time to do it. The record was fully briefed. I think a fair reading of it is that Judge Ali Khan's motion for granting of the summary judgment should be affirmed. Thank you. Thank you very much. Briefly, as I mentioned earlier, I think the link between the 2019 denial of the motion for leave to file the amended complaint, if you look at Note 5 of the court's Memorandum of Opinion on Summary Judgment, it specifically references Mr. Neambol's trying to refer to other instances of alleged defamation. It's outside the scope. We would submit it would have been a game changer. The scope would have been expanded. The way we believe the court would have viewed his allegations and the record evidence would have been, we think, significantly different if that complaint had been permitted to be amended. The only other comment I have, two things, actually two things. One, appellant does respectfully disagree with the court's approach in denying, I think it was three or four motions, docket entries 371 to 375 in a sort of a blanket mootness type ruling without giving specific consideration to those. And that's all. Thank you for your time and consideration. Thank you. Thank you to both counselors.
judges: Rao; Pan; Garcia